## Case No. 4,465.

### The EMMA JOHNSON.

[1 Spr. 527.] [1]

District Court, D. Massachusetts. Oct. 1860. [2]

H. A. Scudder, for libellant,

T. H. Russell, for claimants,

SPRAGUE, District Judge. For ten years last past, this schooner has been regularly plying between Boston and Chatham, in this state, as a packet, for the transportation of merchandize, for all customers. She was, therefore, a common carrier.

In July, 1859, Doctor Carpenter, the libellant, by his agents, put on board of her, at Boston, a piano forte, to be conveyed to Chatham, and took the following receipt: "Boston, June 28th, 1859, received from Hallett & Cumston, on board schooner Emma Johnson, one boxed piano forte, marked E. W. Carpenter, Chatham." Such receipts are common, on these short coasting voyages, and it is contended by the claimants, that the undertaking, in this case, is to be deemed the same as if a common bill of lading had been signed, and for this case I shall so consider it. On the arrival of the vessel at Chatham, the piano forte was found to have been much damaged by sea-water; and compensation for that injury is now sought by this suit. The goods not having been delivered by the carrier in like good order and condition, as when received, the burden is upon him to exonerate himself from liability. This he has attempted to do, insisting that the loss was occasioned by perils of the sea. This vessel sailed from Boston on the evening of the first of July, and had a pleasant run, with a fair leading breeze, and arrived off Chatham in about ten hours, and was then found to have

[1] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]
[2] [See Case No. 2,430.]

water in her hold, by which much damage was done to this piano, and other parts of the cargo. Upon subsequent examination, it was found, that from one of the seams, being the third or fourth from the garboard, the oakum was entirely gone, to the length of eight or ten inches, and that other seams in her bottom were defective, being found, as expressed by the caulker, to be "soft."

What perils of the sea caused this defective condition of the seams, and particularly the aperture through which the water was admitted? To this question the respondent has given no answer, except by introducing evidence that ships not unfrequently spring a leak at sea. But no witness has stated that such an occurrence as a seam in the bottom of a vessel, being without oakum for eight or ten inches, occurs at sea, without previous violence of wind or wave, or stress of weather, or accident, even on long voyages, much less that such a phenomenon occurs in a pleasant and easy run of only ten hours from port. The respondents are compelled to ascribe the accident to some inexplicable action of a treacherous element; in other words, to say that it is one of the mysteries of the sea. The burden of proof is upon the respondents; and before they can expect the court to listen to the suggestion, that the loss arose from inscrutable agency of the elements, they must, at least, by proof, negative all other causes; and in particular, they must show, by full and satisfactory evidence, that the vessel was in good condition, and suitable for the voyage, at its inception. It is always the duty of the owners to provide such a vessel. It is a part of their contract, that the vessel, when she enters upon the voyage, is seaworthy, so as to be suitabe for the undertaking. It is not sufficient that they honestly believe her to be so, she must be so in fact.

This vessel has been running between Boston and Chatham for ten years, and yet the owners have introduced no evidence to show when, in what manner, or by whom, her bottom had been caulked. They have, indeed, shown, that on the 12th of May, 1859, she was hauled out at East Boston, and her wales and upper works caulked, and her bottom, after being cleaned, was examined by the caulker.

But this examination was a mere inspection, with the exception of trying some of the butts; and it was further in evidence, from the seamen, that the vessel had performed well, and carried her cargoes safely on previous trips. All this may be true, and yet the very defective condition in which the seams were found may have been, and probably was, owing to the caulking being too old, or improperly done; and if, from either of these causes, the vessel was defective, the owners must be responsible.

In my opinion, the owners have not shown that this loss was occasioned by a peril of the sea, and the libellant is entitled to recover.

The view which I have taken precludes the necessity of considering the questions, as to stowage, and due attention to the pumps, which were much contested at the hearing.